# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

TYRONE L. GRAFFREE,

      Plaintiff,

      v.                                       Case No. 09-cv-167

ANGELA SHELTON, JAN CUMMINGS,
and JOHN DOE, at Attorney General's Office,

      Defendant.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. #33) AND DISMISSING THIS ACTION

Plaintiff is proceeding on a due process claim that he spent four months incarcerated as a result of defendants' actions in pursuing revocation of his probation. For the reasons set forth below, the defendants' motion for summary judgment will be granted and this case will be dismissed.

## I. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## II. FACTS

Plaintiff was convicted on April 20, 2001, on fourteen counts of medical assistance fraud/benefit application in Milwaukee County Case Number 00CF006010. On May 29, 2001, he was sentenced to three years and six months in prison on counts 2 and 3. As to the remaining counts, 1 and 4 through 14, the sentence was withheld and plaintiff was placed on probation for a period of ten years consecutive to his prison term. Plaintiff commenced mandatory release parole supervision on September 24, 2003, with a parole discharge date of November 24, 2004. His case was transferred to the State of Mississippi under interstate compact on December 8, 2003.

Plaintiff's Mississippi chronological supervision records show that an apprehension request was issued on October 25, 2004, because he violated supervision by

absconding, testing positive for THC and committed an additional infraction of a confidential nature. (Antilla Aff. ¶ 4, Exs. 1002-1003.)

However, a violation warrant was not issued "stopping time" prior to plaintiff's November 24, 2004, discharge date.[1] As a result, plaintiff was issued a Discharge Certificate signed by Secretary Matt Frank on December 15, 2004. (Antilla Aff. ¶ 5, Ex. 1004.) On November 24, 2004, plaintiff's case status changed to probation and a new face sheet for the consecutive probation case was issued. (Antilla Aff. ¶ 6, Exs. 1005-1006.) On July 30, 2005, plaintiff was arrested in Mississippi on the apprehension request that was issued while he remained on parole. The violation underlying the apprehension request continued after plaintiff was discharged from parole on November 24, 2004. The extradition warrants ordering plaintiff's return to Wisconsin all note his case status as probation. (Antilla Aff. ¶ 7, Ex. 1007.)

After plaintiff was apprehended on July 30, 2005, he was extradited to Wisconsin where the DOC placed him on a hold to investigate the violations of supervision. At all times relevant, defendant Angela Shelton was employed by the DOC as a Probation and Parole Agent-Senior. In August 2005, Shelton transferred from one unit to another, where she inherited plaintiff's case from his former agent, Alicia Smith.

---

[1] It appears that the Department had contemplated issuing a warrant for the violation of parole on January 14, 2005, but this was not processed as the parole had been allowed to discharge. (Antilla Aff. ¶ 8, Ex. 1008.)

A request for a violation warrant (stop time request) was completed on February 17, 2005 for the probation case. (Antilla Aff. ¶ 9, Ex. 1009.) It does not appear, however, that this was ever processed through Central Records as there is no case status change for absconding noted in the Offender Automated Tracking System ("OATS").

Agent Shelton handled the revocation preparation after plaintiff was arrested in Mississippi and returned to Wisconsin. The case was staffed with Shelton's supervisor Glenda Meeks in consultation with Assistant Regional Chief Mary Jane Antilla. Shelton, Meeks, and Antilla decided to revoke plaintiff's probation because he had absconded, failed to pay restitution, and drove on a suspended license. These violations continued after plaintiff's discharge from parole.

On August 15, 2005, defendant Agent Shelton completed a Violation Investigation Report, which recommended revocation of probation and included plaintiff's signed statement admitting to the violations. (Antilla Aff. ¶ 11, Ex. 1010.) Plaintiff was served with two DOC-414's (Notice of Violation, Recommended Action and Statement of Hearing Rights). The first DOC-414 was served on August 18, 2005, but included dates for violations that occurred during the parole period. (Antilla Aff. ¶ 12, Ex. 1011.) Plaintiff was re-served with a second DOC-414 on August 23, 2005, which included the three violations that were addressed in the hearing. Violation number one occurred following his discharge from parole on November 24, 2004, and violations 2 and 3 began during the parole and continued following discharge from parole into probation supervision. (Antilla Aff. ¶ 13, Ex. 1012.)

Plaintiff remained in custody without a preliminary hearing because he provided a signed statement admitting the violations. (Antilla Aff. ¶ 14, Ex. 1010.) On September 18, 2005, Shelton submitted a Revocation Summary. (Antilla Aff. ¶ 14, Ex. 1013.) A revocation hearing followed on September 29, 2005, before an administrative law judge within the State of Wisconsin Division of Hearings and Appeals. At the time of the hearing, Shelton was unable to locate a DOC Discharge Certificate, showing that plaintiff's parole discharged on November

24, 2004. Consequently, she printed a Face Sheet form and filled it in with information from the Offender Automated Tracking System ("OATS"), indicating that plaintiff's parole discharged on November 24, 2004. On October 20, 2005, the judge issued his decision. (Antilla Aff. ¶ 17, Ex. 1017.)

> In pertinent part, that decision reads as follows:
>
> The sentence structure in this case is not complicated. The client was sentenced to a prison term of three years and six months. Upon discharge of that prison term, the client would begin serving ten years on probation supervision. As noted above, the client was released from prison to parole supervision on September 23, 2003. His projected discharge date was November 24, 2004. The client allegedly violated his supervision on April 21, 2004. The Department issued an order stopping his time effective April 21, 2004 and issued an apprehension request on October 25, 2004 (Exhibit #5). The client remained in absconder status until his arrest in Mississippi on July 29, 2005. At the time of the hearing on September 29, 2005, there was no documentation in the Department's file that the Department had reinstated the client's parole. Nor has evidence been submitted subsequent to the September 29, 2005, hearing that the client's parole had been reinstated by the Department before the client's arrest on July 29, 2005. In fact, the client was arrested on a Department warrant which had issued on October 25, 2004, clearly during the term of his parole supervision.
>
> It is clear from the record that the client was on parole supervision at the time of his arrest on July 29, 2005 in the State of Mississippi. The record suggests the Department has taken action since that time, apparently since the hearing on September 29, 2005, to allow the client's parole supervision to discharge. That does not alter his status at the time of the alleged violations here. The Department has not requested revocation of the client's parole supervision. Absent such request, the examiner is without authority to order revocation of the client's parole supervision. The only violations that have been alleged here occurred while the client was on parole supervision. Since there was no violation during the client's probation supervision, the examiner must order the client's probation not be revoked.

> An argument can be made that the Department inadvertently requested revocation of the wrong status. That would not be supported by the record here. All of the documentation in the Department's file indicated that the client was on parole supervision. Agent Shelton was unable to locate a Department Face Sheet (DOC 3) which reflected the client's probation status. As a result, Agent Shelton created that document (Exhibit #1, page 3). The information in that document is clearly and patently incorrect. Agent Shelton testified she was acting on directions from the Regional Chief and that the Regional Chief was responding to pressure from the Attorney General's Office. No effort was made to determine if there was an error in the records in the Department's file and whether the probation supervision had begun. Rather, the documentation in the Department's file was disregarded and the Department acted with clear and intentional disregard of the client's status. The Department did not inadvertently check the wrong box in this request for revocation (Exhibit #1, page 1).
>
> Since the examiner has determined that none of the alleged violations occurred during the client's probation supervision, the examiner must order the client's probation not be revoked. Finding a violation during the current term of supervision is an essential prerequisite to ordering revocation. "Implicit in the system's concern with the parole violations is the notion that the parolee is entitled to retain his liberty as long as he substantially abides by the conditions of his parole. The first step in a revocation decision thus involves a wholly retrospective factual question: whether the parolee has in fact acted in violation of one or more conditions of his parole." Morrisey v. Brewer, 33 L. Ed. 484 (1972) at 493 [sic]. In addition, since the Department has not requested revocation of the client's parole supervision, the examiner cannot order revocation of that status.

(Antilla Aff. ¶ 17, Ex. 1014; Complaint, Exhibit.) Consequently, plaintiff's probation was not revoked.

At all times relevant, defendant Janice Cummings was employed by the DOC as a Correctional Services Manager. In that capacity, Cummings recommended statewide policies and procedures and had administrative responsibility for the management of the

regional staff and resources necessary to implement the Department and Division of Community Corrections' mission, goals, and objectives within one of eight regions. She was not involved in revocation decisions, except under unusual circumstances. In 2004, Cummings had approximately 14,000 persons on supervision in Milwaukee, and there were about 400 probation/parole agents. Most, if not all, case supervision decisions, including custody and revocation matters, were handled by the probation agent, the probation agent's supervisor, and the Assistant Regional Chief. On occasion, Cummings reviewed revocation decisions and/or processed revocation packets in the absence of an Assistant Regional Chief or because of an Assistant Regional Chief's heavy workload. However, Cummings has no recollection of plaintiff's revocation proceedings, and does not believe she was involved in the decision to seek revocation.

## ANALYSIS

The defendants contend that (1) Agent Shelton is entitled to absolute immunity for her actions relating to the decision to pursue revocation of plaintiff's probation; (2) Chief Cummings should be dismissed from this lawsuit inasmuch as she had no personal involvement in the decision to revoke plaintiff's probation; and (3) plaintiff cannot establish that defendants violated his due process rights by placing him on a hold and pursuing revocation of his probation.

Absolute immunity is a complete defense to liability for monetary damages. However, "absolute immunity from civil liability for damages is of a rare and exceptional character.'" *Auriemma v. Montgomery,* 860 F.2d 273, 275 (7th Cir. 1988) (quoting *Cleavinger v. Saxner,* 474 U.S. 193, 202 (1985)), and there is a presumption against granting government

7

officials absolute immunity, *Houston v. Partee,* 978 F.2d 362, 368 (7th Cir. 1992). To determine whether a public official is absolutely immune from suit, the Supreme Court has adopted an approach that focuses on "the nature of the function performed, not the identity of the actor who performed it[.]" *Forrester v. White,* 484 U.S. 219, 229 (1988).

Parole agents are entitled to absolute immunity when they perform activities that are analogous to those performed by judges or prosecutors. *Dawson v. Newman,* 419 F.3d 656, 662 (7th Cir. 2005). Such activities include the final decision to grant, revoke or deny parole, and the signing of an arrest warrant. *Id.* Absolute immunity is extended even to a parole agent's routine activities if those activities, such as scheduling (or failing to schedule) a hearing, are sufficiently adjudicative in nature. *Walrath v. United States,* 35 F.3d 277, 283 (7th Cir. 1994); *Thompson v. Duke,* 882 F.2d 1180, 1184-85 (7th Cir. 1989). However, absolute immunity does not extend to duties of a parole agent that are analogous to those performed by police officers. *Wilson v. Kelkhoff,* 86 F.3d 1438, 1446 (7th Cir. 1996). Duties that are analogous to those performed by police officers include investigating potential charges, initiating revocation proceedings, and issuing notices of charges. *Id.* at 1445-46.

Examining plaintiff's allegations in light of the above case law, Agent Shelton is not immune from suit for damages arising from her initiation of revocation proceedings and recommendation that plaintiff's probation be revoked. *See id.*; *see also Dawson,* 419 F.3d at 662 (holding that parole officers were not absolutely immune from charges that they ignored plaintiff's statements that the conviction upon which his parole was based had been reversed and "refused to investigate his claim of entitlement to release"). Moreover, in printing and completing a Face Sheet form for plaintiff with information from OATS, Shelton's actions were

8

akin to those of a police officer and not judicial in nature. Consequently, Agent Shelton's is not entitled to absolute immunity from plaintiff's claims in this action.

As to whether the claim against Chief Cummings should be dismissed, the court notes that liability under 42 U.S.C. § 1983 arises only when a defendant is personally responsible for the deprivation of which the plaintiff complains. *See e.g., Johnson v. Snyder*, 444 F.3d 579, 583 (7th Cir. 2006); *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996); *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). To establish personal liability for a subordinate's acts, a supervising official "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Johnson*, 444 F.3d at 583-84 (quoting *Gentry*, 65 F.3d at 561).

The evidence submitted in support of summary judgement establishes that Chief Cummings was not personally involved in the events underlying plaintiff's claims. Cummings had no knowledge of plaintiff or his case, and submitted an affidavit attesting to her lack of knowledge respecting the decision to seek revocation of plaintiff's probation. On the other hand, the plaintiff points to the administrative law judge's decision citing Shelton's testimony that she was acting on directions from Chief Cummings, who was responding to pressure from the Attorney General's Office. This disagreement regarding Cummings involvement creates a genuine issue of material fact which precludes granting summary judgment on defendants' claim that Cummings lacked personal involvement in plaintiff's revocation proceedings.

Finally, defendants contend that plaintiff cannot establish a due process violation based on pursuit of revocation of his probation.[2] An individual on parole or probation has a protectible liberty interest associated with his status as a parolee or probationer. *See Morrissey v. Brewster*, 408 U.S. 471, 482 (1972) (parole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (probation). A probationer or parolee is entitled to a preliminary and a final revocation hearing that must meet certain procedural due process standards. *Morrissey*, 408 U.S. at 485-88; *Gagnon*, 411 U.S. at 782.

With respect to the preliminary hearing, the Supreme Court has stated that the minimum requirements of due process entitled a probationer or parolee to the following: "notice that the hearing will take place and that its purpose is to determine whether there is probable cause to believe he has committed a parole violation. The notice should state what parole violations have been alleged." *Morrissey*, 408 U.S. at 486-87; *Gagnon*, 411 U.S. at 782. The due process requirements for a final revocation include:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Morrissey*, 408 U.S. at 488-89; *Gagnon*, 411 U.S. at 782.

---

[2] In his response brief, plaintiff asserts a Fourth Amendment false arrest claim. However, he is not proceeding on such a claim. *See* Court's Screening Order, June 24, 2009.

The DOC may incarcerate a probationer for up to five business days while considering whether to commence revocation proceedings, Wis. Admin. Code § DOC 328.22(2)(b), and, if the violation has been admitted in writing (as it was in the statement signed by plaintiff), continue to detain the probationer pending a final revocation hearing. Wis. Stat. § 973.10(2) Wis. Admin. Code §§ DOC 328.22(4), 331.04(1), 2(b),(5); *see Faheem-el v. Klincar*, 841 F.2d 712, 724 (7th Cir. 1988); *see also Johnson v. Sondalle*, 112 Fed. Appx. 524, 527-28 (7th Cir. 2004) (unpublished) (Wisconsin DOC did not unlawfully jail probationer on motion to revoke probation after he signed consent to enter drug treatment as alternative to revocation, inasmuch as state regulations provided for his continued detention when proposed program was not available, given his admission of violation in writing under Wis. Admin. Code §§ DOC 331.04(1), (2)(b), (5)). Moreover, plaintiff received a final revocation hearing within a reasonable amount of time. *See Morrissey*, 408 U.S. at 488 (due process requires a final revocation hearing "within a reasonable time" after the probationer is taken into custody and a lapse of two months is not unreasonable).

The record establishes that plaintiff was on probation at the time of his violation and, although Shelton was unable to locate his Discharge Certificate, she provided other evidence confirming his probation status. That plaintiff's probation was not revoked after the DOC failed to satisfy its burden of proof, does not render any actions by any defendant respecting the revocation proceedings in question unconstitutional. At most Agent Shelton's failure to produce sufficient evidence for revocation was negligence, but not a constitutional violation. *See County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998); *Daniels v. Williams*, 474 U.S. 327, 329-31 (1986). In short, although the administrative law judge declined to revoke

plaintiff's probation, there is no evidence of a constitutional violation that entitles the plaintiff to any relief. Therefore,

**IT IS ORDERED** that defendants' motion for summary judgment (Docket #33) is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**.

Dated at Milwaukee, Wisconsin, this 7th day of March, 2011.

BY THE COURT

/s/ C. N. Clevert, Jr.
C. N. CLEVERT, JR.
CHIEF U.S. DISTRICT JUDGE